# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

FILED
NOV 13 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. **19MJ5054**
)
Green Apple iPhone 11 Pro )
IMEI: 353232108517857 )
Seized as FP&F No. 2020250600005601 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Section 952, 960, 963 | Importation of Methamphetamine, Conspiracy to Import Methamphetamine |

The application is based on these facts:

See Attached Affidavit incorporated herein

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Nicholas Lawlor, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **Nov. 13, 2019**

_____
*Judge's signature*

Andrew G. Schopler, United States Magistrate Judge
*Printed name and title*

City and state: San Diego, California

# AFFIDAVIT

I, Nicholas Lawlor, having been duly sworn, do hereby state that the following is true to my knowledge and belief:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device, as further described in Attachment A, and seize evidence of crimes, specifically violations of Title 21, United States Code, Section(s) 952, 960, and 963, as further described in Attachment B:

> Green Apple iPhone 11 Pro
> IMEI: 353232108517857
> Seized as FP&F No. 2020250600005601
> **(Target Device)**

The requested warrant relates to the investigation and prosecution of Kevin PONCIANO ("PONCIANO") who is currently charged with violating 21 U.S.C. §§ 952 and 960.

2. As described further below, agents with United States Customs and Border Protection (CBP) seized the **Target Device** from PONCIANO on October 15, 2019, when he was arrested for the importation of approximately 15.62 kilograms (34.44 pounds) of methamphetamine that was found concealed in his vehicle as he attempted to enter the United States from Mexico through the Otay Mesa, California Port of Entry ("Otay Mesa POE"). During a post-arrest interview, PONCIANO acknowledged that the **Target Device** belonged to him. The **Target Device** has been securely stored since it was seized and is currently in the possession of the Department of Homeland Security evidence vault located at 2255 Niels Bohr Ct, San Diego, CA 92154.

3. Based on the information below, I submit that there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as more particularly described in Attachment B.

4. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement, as well

1

as my review of reports prepared by other law enforcement officers and agents. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

5. I am a Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I have held my current position with HSI since January of 2017. I am a graduate of the Uniformed Police Training Program (UPTP), the Criminal Investigator Training Program (CITP), and the Homeland Security Investigations Special Agent Training (HSISAT) program at the Federal Law Enforcement Training Center (FLETC) in Brunswick, Georgia. I am also a graduate of the United States Secret Service (USSS) Uniformed Division Officer Training Course (UDTC) program at the USSS James J. Rowley Training Center located in Laurel, Maryland.

6. Prior to my current position with HSI, I was a Uniformed Division Officer with the United States Secret Service in Washington, D.C. and was assigned to work at the White House. During the course of my training at FLETC, I learned fundamentals of how to conduct criminal investigations including, but not limited to, gathering of evidence, preservation of a crime scene, and use of electronic evidence – all in relation to violations of the United States Code. I have participated in training related to controlled substances, including but not limited to marijuana, cocaine, methamphetamine, and heroin. I have also received training in the methods used by illicit drug traffickers to import, distribute, package, and conceal controlled substances

7. I am presently assigned to the HSI Deputy Special Agent in Charge (DSAC), San Ysidro, California Office, and my duties entail investigating the smuggling of controlled substances and merchandise into and out of the United States of America. As an HSI Special Agent, I have received training in illicit drug enforcement and participated in numerous criminal investigations involving the shipments and smuggling of various

kinds of contraband; including illicit drugs and other prohibited items into and out of the United States.

8. During my tenure with HSI, I have participated in numerous arrests of persons for violating the Controlled Substances Act and have participated in the investigation of various drug trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through interviews, I have gained a working knowledge and insight into the methodology on controlled substance traffickers as they attempt to smuggle illicit drugs into the United States.

9. Through my training, experience, and conversations with other members of law enforcement, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at the Ports of Entry. I am aware that it is common practice for illicit drug smugglers to work in concert with other individuals and to do so by utilizing cellular telephones. Because they are mobile, the use of cellular telephones permits illicit drug traffickers to easily carry out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress of their contraband while it is in transit, providing instructions to drug couriers, warning accomplices about law enforcement activity, and communicating with co-conspirators who are transporting narcotics and/or proceeds from narcotics sales.

10. Based upon my training and experience as an HSI Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Narcotics traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Narcotics traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

3

c. Narcotics traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d. Narcotics traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e. Narcotics traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f. Narcotics traffickers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or narcotics proceeds.

g. The use of cellular telephones by conspirators or narcotics traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

11. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone. SIM cards are necessary for a cell phone to operate properly. I believe there is a SIM card in the **Target Device**

12. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien smuggling investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have learned them from a review of reports or had them relayed to me by persons mentioned in this affidavit.

4

## FACTS SUPPORTING PROBABLE CAUSE

13. According to CBP Officer (CBPO) M. Gabbard's report, on October 15, 2019, at approximately 6:38 a.m., PONCIANO applied for permission to enter the United States at the Otay Mesa POE. PONCIANO was the driver, registered owner, and sole occupant of an orange 2012 Jeep Patriot bearing California plates 7KGN339 ("the Vehicle"). PONCIANO told CBPO Gabbard that he had nothing to declare and that he was traveling to San Diego for work. According to CBPO D. Murray's report, PONCIANO was referred for secondary inspection after a CBPO Murray's canine alerted to electronic equipment located in the rear cargo area of the Vehicle.

14. According to CBPO A. Gray's report, a subsequent inspection of the Vehicle was performed. CBPO Gray discovered seven (7) packages concealed within seven (7) electronic components; three (3) wall projectors, three (3) power source/invertors, and one (1) Duralast battery jump starter, located in the rear cargo area and on the passenger side of the Vehicle. The packages weighed approximately 15.62 kg (34.44 lbs.), and field-tested positive for methamphetamine.

15. PONCIANO was subsequently arrested at approximately 8:20 a.m. on October 15, 2019 and the **Target Device** was seized from the Defendant. During a post-arrest interview with PONCIANO, he acknowledged the **Target Device** belonged to him.

16. I was notified and responded to the Otay Mesa POE. On October 15, 2019 at 11:25 a.m., I advised PONCIANO of his *Miranda* rights. PONCIANO stated he understood those rights and was willing to waive them and give an interview. He also signed a Waiver of Rights form.

17. During his interview, PONCIANO denied knowledge of the narcotics in the vehicle. PONCIANO stated that he crosses into the United States every day for work. PONCIANO stated that he works for a company called Portal AM California. PONCIANO stated that his job duties entail going to San Diego restaurants, museums, and parks to photograph those locations and then he writes a review of those locations and submits them to his boss, Barbara BELTRAN ("BELTRAN") via email. PONCIANO further stated that

5

he also delivers electronic equipment for BELTRAN to a person named "FERNANDO" either at a Carl's Jr. or a local junk yard. PONCIANO stated that BELTRAN tells him what to do and FERNANDO coordinates the equipment drop off. PONCIANO stated that when he received the Duralast battery jump starter from BELTRAN, he noted that it seemed heavy and became suspicious. PONCIANO stated that he sent messages to BELTRAN through the WhatsApp application on his phone asking about the battery jumper having something inside of it. PONCIANO also stated that he uses Facebook Messenger to communicate with BELTRAN.

18. Based upon my experience investigating drug smuggling, my training, and my consultation with other investigators who have experience investigating drug smuggling near the border, I understand that drug smugglers will seek to smuggle illicit drugs from Mexico to the United States by hiding the illicit drugs in hidden compartments of vehicles, in non-factory compartments (*i.e.*, compartments that the manufacturer did not design for ordinary use), or in some other manner to avoid detection as the drugs are being smuggled north from Mexico through Ports of Entry (POE). I am also aware that such individuals will sometimes try to generate a history of crossings to show that driving through a POE is ordinary behavior for them. When they arrive in the United States, smugglers will take the illicit drugs to a discreet location to transfer them to other people involved in the distribution chain, who can then send the illicit drugs to other locations for downstream distribution.

19. Given the facts surrounding the arrest of PONCIANO and based upon my experience and training, as well as consultation with other law enforcement officers experienced in drug smuggling investigations, I submit that there is probable cause to believe that information relevant to the smuggling activities of PONCIANO will be found in the **Target Device**. Such evidence, which could be in the form of communications, records, data (including but not limited to emails, text messages, other social messaging applications), photographs, audio files, videos, or location data:

   a. tending to indicate efforts to import methamphetamine, heroin, fentanyl, or other federally controlled substances from Mexico into the United States;

6

b.  tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, heroin, fentanyl, or other federally controlled substances from Mexico into the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine, heroin, fentanyl, or other federally controlled substances from Mexico into the United States;

d.  tending to identify travel to or presence at locations involved in the importation of methamphetamine, heroin, fentanyl, or other federally controlled substances from Mexico into the United States;

e.  tending to identify the movement of proceeds associated with the trafficking of methamphetamine, heroin, fentanyl, or other federally controlled substances that are imported from Mexico into the United States;

f.  tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

g.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

20.  Finally, I note that drug conspiracies general entail detailed and intricate planning as part of the efforts to evade detection by law enforcement. In my training and experience, I know that this requires planning and coordination of a drug smuggling event in the days and weeks (and often months) prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Accordingly, I believe that the appropriate date range for the search of the **Target Device** is from July 18, 2019 through October 16, 2019, which was the day following PONCIANO's arrest.

## METHODOLOGY

21.  It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be

7

simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this Court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

24. At the time of Defendant's entry into the United States, law enforcement officers conducted a manual review of the **Target Device** with the consent of the Defendant. I have not included any information obtained from the manual review in this affidavit and submit that probable cause exists to search the **Target Device** without that information.

## CONCLUSION

25. Based on the facts and information set forth above, there is probable cause to conclude that Defendant used the **Target Device** to facilitate violations of Title 21, United States Code, Sections 952, 960, and 963.

26. Because the **Target Device** was seized at the time of Defendant's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from July 18, 2019 through October 16, 2019.

27. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B, using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Nicholas Lawlor
Homeland Security Investigations

Subscribed and sworn to before me this 13th day of November, 2019.

Hon. Andrew G. Schopler
United States Magistrate Judge

## ATTACHMENT A
## PROPERTY TO BE SEARCHED

The property/item to be searched is described as:

    Green Apple iPhone 11 Pro
    IMEI: 353232108517857
    Seized as FP&F No. 2020250600005601

**("Target Device")**

**Target Device** is currently in the possession of the Department of Homeland Security evidence vault located at 2255 Niels Bohr Ct, San Diego, CA 92154.



## ATTACHMENT B
## ITEMS TO BE SEIZED

Authorization to search the cellular phone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular phone. The seizure and search of the cellular phone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Device** will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period from July 18, 2019, to and including October 16, 2019:

   a. tending to identify attempts to import methamphetamine, or some other controlled substance from Mexico and distribute the controlled substance in the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling and distribution of methamphetamine or some other controlled substance from Mexico into, and through, the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in smuggling and distribution of methamphetamine or some other controlled substance from Mexico into the United States;

   d. tending to identify travel to or presence at locations involved in the smuggling and distribution of methamphetamine, or some other controlled substance, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.